Can we take up Macias-Ramos v. Schiltgen? May it please the Court, my name is Lewis Scordia and I'm here on behalf of Carlin & Carlin for the petitioner Tomas Macias-Ramos. I would like to reserve three minutes for rebuttal. What I'm trying to do here today is avoid a tragedy, to avoid a situation where a man who is married to a U.S. citizen wife has U.S. citizen children will be deported back to Ecuador for a crime he committed in 1992 when he was 19 years old, which was expunged at that point in time and which I believe the immigration judge at that point in time improperly held against him and did and found that he did not qualify for. Counsel, I think in looking at the law, it's clear that the I.J. was wrong in his treatment of the expungement issue, but he then went on at that time to do a thorough review of whether this individual could qualify for discretionary relief and decided that he hadn't shown extreme hardship, so how do we handle that? Well, you A, have a constitutional violation of the law at the time. The I.J. said, I'm putting aside whether or not he has this crime which would be counted against him. I'm going to go ahead and look at whether he has established the other conditions for a grant of relief and decided that he couldn't show extreme hardship. Well, you can, we can make, I believe, a very strong argument that under the extreme hardship standard at that time, the I.J. is in error on that as well. Clearly, today, he indeed has extreme hardship. Well, can we look at that? Well, if you look at the concatenation of the circumstances and you have held in Singh v. INS, you've reopened a case where it leads to an unconscionable result. I believe if you look at the total circumstances in this case, deporting this man to Ecuador leads to an unconscionable result. The Board waited six years to decide his case. He. What does the record show he did to speed it up? Well, he did send a letter advising the Board in 1998 that he was married and which the Board at that time did not find persuasive. Now, with the with the change in the law, he's he's no longer eligible. He's now he's now 30 years old. And this this if he's deported back to Ecuador, he'll be subjected to the 10 year bar for which will need a hardship waiver. He'll also need a waiver of deportability. Given the equities that he has, I believe that that's an unconscionable result, particularly when the law at the time would have allowed him to to use that expungement. Also under St. Cyr, the Supreme Court upheld the idea that if someone had pled to a crime knowing they would still get that subsequent hearing, I would ask you to use the same type of rationale to in this case, he pled to a crime knowing that he would be able to use that expungement for his immigration proceeding. He indeed got it expunged and indeed under the law at the time it was available to him. So. I would ask that you apply the same Cyr rationale to to this case, particularly given the fact that he does have he does have the equities which would allow him to adjust his status. There is an approved I-130. That's not a question. Now, this is a you're on habeas relief here. Yes. OK, so his motion to reopen to for adjustment of status was denied. Well, what happened was he filed a motion to reopen to adjust status, but he had got the board's decision late. His previous attorney had never changed his address in the post office, sent it to an attorney, which was returned to the BIA. He therefore got his his petition for review filed late, his initial petition for review and the motion to reopen the I-130 was not approved till after the 90 day filing period at that point in time. Now, in this circuit, my understanding is the law is that if you have a filed I-130, you and bona fides in the marriage, you could have your case reopened. But at that point in time, you you could not. Well, have you sought that relief or is it barred at this? Well, we would need a stipulation from the district counsel's office to do that. The problem is we had. We had sought their stipulation earlier and they refused to because they say he had a bag and baggage letter, which he did not show up for. However, it's clear that he never received the bag and baggage letter because his petition for review was filed subsequent to that. So he they my understanding is that they will not or they did not stipulate to reopening the case, and that's why he filed the habeas corpus relief in district court. All right, counsel, you want to reserve time? Yes. Thank you. May it please the Court. Assistant U.S. Attorney Vince Farhad for the Department of Homeland Security. This court held in Murillo Espinosa that an alien's expunged firearms conviction is a proper basis for an order of deportation. Murillo Espinosa is dispositive of this case because this court already has rejected Mr. Ramos's contention that his expunged conviction should not count for immigration purposes. Well, let's go back at the time that the I.J. had the original hearing. The I.J. was wrong. At that time, expungement was a basis for wiping out the crime as far as the immigration service was concerned. That's correct. Is that not right? Your Honor, the I.N.S.'s position at that time was that a firearms conviction was not expungable, and this court recognized that in the case of Carr v. I.N.S., which was a 1996 case reviewing an order of deportation from 1993, where the I.N.S.'s position, even back in 1993, that a firearms conviction is not expungable for immigration purposes. There were several I.N.S. cases at that time that applied it to drugs, but not to firearms. I think you're incorrect in that. But it may not be dispositive of this case, but I think that at the time that the I.J. made its decision that expungement did expunge it as far as the federal government was concerned. It is our position that the law may have been murky at that time. However, it is clear today, and it was clear at the time that the BIA ruled in this case, the BIA is bound to follow the law at the time that they handed down their order. And in 1999, when the BIA affirmed the I.J.'s decision, the BIA was relying on, or this court recognized in Maria Espinoza, that the law was clear at that time and settled after the 1996 amendments. Well, and I'm not sure that this would be dispositive at all, but Sincere would plug in at that point, I think. But I think the problem is that the I.J. at that time went ahead and decided that he wasn't able to show extreme hardship. Yes, Your Honor. The I.J. went through the analysis for the suspension, the application for suspension of deportation, and made the finding, the discretionary finding, that the plaintiff had not shown extreme hardship. And that is in the record as well. So even assuming there was an error of the law, he did make the findings that he was not eligible for suspension of deportation. I'm concerned, counsel, that his counsel at that time did not put in appropriate evidence to show that he was entitled to voluntary departure. The I.J. said, you know, I offered you two opportunities to do that and you didn't take them. So that it seems to me that where there is an avenue for relief for this individual is to find that his counsel was incompetent in that regard and that he should be entitled to a voluntary departure. Well, Your Honor, that's not an issue that Mr. Ramos addressed in his papers. No, I'm addressing it. And to the extent that the Court would want supplemental briefing, we would be prepared to brief that issue. In his papers, as you know, he's only addressed the issue of the six-year delay in arguing that that's somehow a due process violation. We believe that Murillo Espinoza clarified the law, and it was the law at the time of the BIA, and that there was no showing of prejudice because the I.J. did analyze the factors and found that there was no extreme hardship. So on this record and the issues raised in the briefs, we believe that the district court was correct in dismissing the petition to the extent that the Court would like us to brief an additional issue that was not raised by the plaintiff. We would be prepared to brief that issue. This is, I think you would have to agree, really a tragic case. The individual was convicted of a misdemeanor. He was a kid, and they didn't give him, they gave him just a very short jail sentence and then suspended it and then expunged the conviction. And he has, from all that one can see from the record, been an exemplary citizen, and that this was almost a kid's prank. They found a gun in the garbage or something and put it in his pack and then decided better that he shouldn't have it. So that it would seem to me that the government might be interested in entering into some kind of a settlement that would give him voluntary departure. Your Honor, this Court recognized in Ramers v. Castro, which is found at 287 F. 3rd, 1172, that the text of section 1101A48A doesn't differentiate between misdemeanors or felonies. In that case, the Court looked at the statute and found that the statute doesn't differentiate and, in fact, said that it was reasonable for the BIA to interpret the statutory definition to encompass both expunged misdemeanor convictions and expunged felony convictions. So this Court has ruled that that distinction doesn't really apply, at least on the facts of that case, for Ramers v. Castro. Counsel, I think Judge Fletcher's question went more to the equities than to the strict reading of the law. So you really didn't answer her question by just reciting that a misdemeanor has the same expungement as the same as a felony. Why don't you answer her question? Because I think we're all, I know I can't speak for everybody, I'm sorry, I am really troubled by the equities of this case. And if you go through the timeline, the series of missteps, the erroneous decision at the IJ, the change in the law, and I think there was a change in the law, while it was sitting at the BIA, it seems like in an inexplicably long period of time, he's married to a U.S. citizen, I believe has a U.S. citizen child. So there are such compelling equities in this case that we look at it and you say, I say to myself, why is the government pursuing this one when there are terrorists out there, for example? Why are they trying to deport this under harsh circumstances? A law-abiding citizen with family here, what is the government's reason for doing this? And is there something that's more equitable, not as harsh, that the government really should be doing, that our government should be doing? Your Honor, I understand what you're saying. The equities may be what the equities are, and I understand Your Honor's point, but the law of this circuit is clear with respect to expunged firearm convictions. And as I stand here, I can say that that law is clear, the case is directly on point. We do believe that it controls the case that's presented before Your Honor today. Mr. Farratt, you may be losing the one vote. Well, I don't know how many votes you had because we don't discuss the case before. But what Judge Fletcher was pointing to was not, Judge Fletcher knows what the law is in this circuit. You can bet your life on that. The other thing that you know she knows is the difference between a misdemeanor and a fact. She was looking at the facts of this misdemeanor and trying to engage counsel in discussion regarding the facts of the misdemeanor. Did she state the facts as they are, in your opinion? Your Honor, the facts as represented in Mr. Ramos' brief were that he was, and I think  he did plead guilty to possession of a concealed weapon. That is, although a misdemeanor, is a felony within the meaning. I don't think he pled guilty. He pled no contendery. And under the definition in the 1986 amendments, it includes guilty plea. Ms. Farratt, we may have to let you read. Thank you. I won't ask you any more questions. But we're just asking, he was asking about the facts, and I'm just correcting the facts. And I do acknowledge that there are some equities here, but it is the government's position that the law is equally clear. And unless the Court has any further questions, we would submit our briefs in the argument. All right. Thank you. Judge Fletcher, I did want to address your concern about the judge's saying that he found no extreme hardship in the excerpts of records that the government submitted at, I think it's page 216 and 178 in the hearing. The judge also said that if at some subsequent time that Mr. Masi's evidence and testimony does establish an extreme hardship to himself or his resident stepmother, I probably would, as a matter of discretion, discounting the conviction for possession of a concealed weapon, grant this request as a matter of discretion that could, I believe, aid you in reaching a decision in favor of the Petitioner. I also wanted to address the voluntary departure issue. It was raised in the briefing before the district court, and I believe that in the general arguments on due process in our briefing, it should be considered incorporated. I'm not sure if that's what you're saying. Once again. In your briefs to us, you don't talk about it. In the – I understand, but it's in the – what was submitted to the district court. As also, it is not – the firearms conviction is not a crime of moral turpitude, and the board in its decision denied him voluntary departure, stating that it's – he didn't meet the moral character requirement. It's interesting. The I.J. found that he did have good character. Right. But denied – denied the voluntary departure. Well, because before the I.J., the lawyer had not put in the proper record that he was able to pay his own way to go away, whatever those things that you have to put in to qualify. Willing to depart and able to depart voluntarily. Right. Well, I believe it was an intense courtroom situation there. But looking at the overall equities in the case, I ask that you finally – You know, I understand why you'd argue the equities, but we have to decide this case as a matter of law, don't we? And we have to follow the law. You do have to follow the law. But as I say, there is precedent in the – both in the Supreme Court with St. Cyr. There's Singh in this circuit. And there's the fact that the BIA – that the I.J. made a mistake in the law at the time of the case. What would be your bottom line, assuming we followed the law and reached a decision based on the law? What would that decision be, in your opinion? Procedurally, I believe you could remand to the district court with an instruction to tell the BIA to reopen. On what theory? On the theory that his due process rights were violated by the immigration judge initially. All right. Thank you. Thank you. Thank you very much, counsel. Macias Ramos v. Shoken will be submitted.
judges: B. Fletcher, Farris, Wardlaw